IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| KATHRYN SHERMAN,<br>　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social<br>Security,<br>　　Defendant. | )<br>)<br>)<br>)<br>) Case No. 22-cv-3113<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION

**COLLEEN R. LAWLESS, U.S. District Judge:**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Administrative Law Judge (ALJ)'s Decision denying Plaintiff Kathryn Sherman's application for social security disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3). Before the Court are the Plaintiff's Brief (Doc. 10), which requests remand, and the Defendant's Brief (Doc. 18), which requests affirmance. For the reasons that follow, the ALJ's Decision is AFFIRMED.

I.　　BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income in 2020, alleging disability as of July 5, 2020. (R. 16). Plaintiff was born on October 27, 1992, making her 27 on her alleged onset date. (R. 24). She has a high school education and was a former retail salesclerk and cashier. (R. 24). Plaintiff filed for disability based on depression, migraines, and tinnitus. (R. 70). Her mother, Tina Sherman, filed a third-party function report, which reported that Plaintiff's migraines and depression cause her

to miss work regularly and that Plaintiff cannot fall asleep, but she is able to take care of her cat, prepare meals, and complete chores. (R. 288-95). This information mirrored Plaintiff's own function report. (R. 318-27).

During the disability determination explanation at the initial level, the agency determined that Plaintiff's migraines are a severe medically determinable impairment, but the disorders of the ear and depressive, bipolar, and related disorders were non-severe. (R. 64). Plaintiff's examiner concluded that she was not disabled. (R. 69). On reconsideration, Plaintiff alleged the new disability of carpal tunnel. (R. 84). The determination on reconsideration also concluded that Plaintiff is not disabled. (R. 97).

An Administrative Law Judge (ALJ) held a hearing in May 2021, at which Plaintiff and a vocational expert appeared and testified. (R. 32-60). Plaintiff, after being admonished by the ALJ about the benefits of having counsel, waived her right to be represented at the hearing. (R. 37). At the hearing, Plaintiff testified that her medications are effective. (R. 42). Plaintiff also testified she has been to an emergency room approximately six times due to migraines. (R. 43-44, 51). Her migraines usually last between a month and a month and a half. (R. 49). She indicated that the last time she had been hospitalized for psychiatric issues was in November of 2014 and the last time she had been taken to an emergency room for those issues was December 14, 2020. (R. 44). Plaintiff testified that she is able to meet her personal hygiene needs. (R. 47).

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since her alleged onset date. (R. 18). The ALJ also found Plaintiff had severe impairments of migraines,

depression, and anxiety. (R. 19). The ALJ recognized there are allegations of carpal tunnel syndrome, but no evidence of objective impairment that results in more than minimal work-related limitations based on medical reports. (*Id.*). The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Specifically, the ALJ determined Plaintiff has the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: she needs to avoid concentrated exposure to extreme cold, extreme heat, noise above level 3, vibration, fumes, odors, dusts and gases. She is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day-to-day, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction. She is limited to jobs that do not require any work-related interaction with the public and no more than occasional work-related interaction with co-workers and supervisors.

(R. 20). The ALJ noted that inconsistencies between Plaintiff's statements at the hearing and the objective medical evidence "significantly reduces the persuasiveness of the claimant's subjective testimony and other subjective statements." (R. 21-22).

Regarding the depression and anxiety, the ALJ concluded that the treatment records indicate an improvement in Plaintiff's mental health and the functional restrictions fail to establish a disabling mental condition. (R. 22). The ALJ further determined that Plaintiff has moderate restrictions in the ability to interact with others, to concentrate, and to adapt or manage herself, but that further limitations are not supported by the record. (R. 23).

The ALJ detailed that he considered the persuasiveness of medical opinions and prior administrative medical findings as well as the third-party function report provided

by Plaintiff's mother, Tina Sherman. (R. 23-24). The ALJ did not find the opinions of the State Agency physicians to be persuasive because they "did not have the benefit of reviewing the latest medical evidence or assessing whether the claimant's statements at hearing are consistent with medical and other evidence of record." (R. 24).

As such, the ALJ concluded that Plaintiff has not been under a disability and there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 25). In March 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-6), thereby rendering the ALJ's ruling the Commissioner's final decision. See 20 C.F.R. § 404.981. As a result, Plaintiff filed this action under 42 U.S.C. § 405(g).

## II.   DISCUSSION

### A.  Legal Standard

The plaintiff has the burden of proving she is disabled. *See Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022), *citing* 20 C.F.R. § 404.1512(a)). For these purposes, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court reviews a decision denying benefits to determine only whether the ALJ applied the correct legal standards and whether

substantial evidence supports the ALJ's decision. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The court considers the ALJ's opinion as a whole, *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004), and the Seventh Circuit has said that it is a "needless formality to have the ALJ repeat substantially similar factual analyses" at different sequential steps. *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020). Although the task of a court is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id.* at 856-57. A reviewing court does not "resolve conflicts or decide questions of credibility." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019).

### B. Analysis

Plaintiff argues that the ALJ erred by: (1) failing to explain why opinions offered by the State Agency Consultants were left out of the RFC; (2) failing to adequately explain how the third-party statement was considered; (3) failing to fully develop the record before formulating the RFC; and (4) failing to build an accurate and logical bridge between his findings of moderate limitations in interactions with others and the RFC.

### 1. Opinions of the State Agency Physicians

First, Plaintiff argues that the ALJ rejected uncontradicted opinions of the State Agency physicians without properly analyzing the supportability and consistency factors. (Doc. 10 at 9). In response, Defendant asserts that the ALJ considered Drs. Treanor's and Madala's findings and found them unpersuasive, noting that they were not well-supported or consistent with the record. (Doc. 18 at 3).

20 C.F.R. § 416.920c(a) provides that an ALJ "will not defer or give any specific evidentiary weight ... to any medical opinion(s) .... including those from [a claimant's] medical sources." He "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (refuting the claimant's argument that "the ALJ erred by failing to adopt her [RFC] as determined by any of her physicians"). However, he must "articulate how [he] considered the medical opinions ... in [a claimant's] claim" according to certain criteria. 20 C.F.R. § 416.920c(a).

Specifically, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022), *citing* 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may, but is not required to, explain his consideration of the other factors after articulating how he

considered medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4, *citing* 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2)).

For instance, in *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004), the Court found that the ALJ adequately discussed the supportability and consistency of the opinion of plaintiff's medical provider. Specifically, in that case, the doctor wrote a letter to the plaintiff's attorney stating that Skarbek "can walk for only short distances, less than one-half block .... he also has difficulty with lifting, he can lift only 5–10 pounds and then develops severe pain." *Skarbek*, 390 F.3d at 502. In that case, the ALJ stated that there were discrepancies between the recommended limitations and the objective medical evidence, so he did not give that physician controlling weight. *Id.* at 504. On appeal, the Seventh Circuit found that the inconsistencies undermined the weight of the physician's opinion and affirmed the ALJ's decision. *Id.* In coming to its decision, the Court emphasized that "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Id.* at 503.

Likewise, in *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016), the Court held that "the ALJ properly discounted [a physician's] medical opinion that rests entirely on the claimant's subjective complaints" rather than the objective medical evidence. In that case,

the ALJ emphasized that the plaintiff's subjective complaints were "contradicted by the claimant's activities of daily living, his routine and conservative medical treatment since 2011, and many earlier reports of minimal or no pain." *Loveless*, 810 F.3d at 508. Thus, the ALJ properly discounted the physician's opinion due to a lack of supportability and consistency. *Id.* at 507.

In the instant case, the State Agency opined that Plaintiff should avoid concentrated exposure to hazards and Dr. Madala found she should be limited to light exertional work with frequent handling and fingering on the right. (R. 91-95). The ALJ did not consider the opinions of the State Agency physicians to be persuasive because they "did not have the benefit of reviewing the latest medical evidence or assessing whether the claimant's statements at hearing are consistent with medical and other evidence of record." (R. 24). Before making that conclusion, the ALJ went through a detailed analysis of the medical evidence in the record and the hearing. (R. 19-24). The ALJ noted that inconsistencies between Plaintiff's statements at the hearing and the objective medical evidence "significantly reduces the persuasiveness of the claimant's subjective testimony and other subjective statements." (R. 21-22). This statement referenced Plaintiff's claims that she went to the emergency room six times in 2021 for migraines, whereas the medical records indicated that none of her emergency room visits were for migraines. (R. 21). The ALJ also detailed the history of migraines, but the lack of complaints of severe and debilitating headache pain. (R. 21). Regarding the depression and anxiety, the ALJ discussed Plaintiff's medical history, treatment records, work history, and the function reports. (R. 22-23). The ALJ concluded from his review that there

is no evidence that Plaintiff is not aware of normal hazards or cannot take appropriate precautions. (R. 23). Further, in explaining that Plaintiff's carpal tunnel syndrome was not a severe impairment, the ALJ highlighted a normal 2020 right arm EMG, a nerve conduction study, and a 2020 orthopedic examination showing no tenderness, normal range of motion, and 5/5 strength. (R. 19).

The ALJ's detailed analysis sufficiently establishes why he believed the opinions of the State Agency physicians were not supported by the objective medical evidence in the record. Specifically, the ALJ did not consider the recommendation for limited handling and fingering based on his prior analysis of the carpal tunnel tests. Just as the discrepancies between the physician's opinion and the medical evidence in *Skarbek* undermined the controlling weight of the physician's finding, the ALJ's discussion of the discrepancies in this case similarly undermines the State Agency physicians' recommendations. Thus, the ALJ's explanation was sufficient and properly discussed the supportability and consistency factors. In reading the ALJ's detailed reasoning, the Court can trace the path of the ALJ's reasoning from the evidence to his assessment of Plaintiff's physical RFC. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (finding it sufficient where the ALJ's "opinion enables [the court] to trace the path of the ALJ's reasoning").

Further, even if the ALJ erred in omitting the handling and fingering limitations in the RFC analysis, any resulting error is harmless. "The harmless error analysis looks to evidence in the record to see if the court can predict with great confidence what the result will be on remand." *Musgrove v. Berryhill*, 2018 WL 1184734, at *5 (N.D. Ill. Mar. 7, 2018). At the hearing, the ALJ posed a series of hypotheticals with more restrictive

limitations and a light RFC to the vocational expert and asked whether these individuals could perform work existing in significant numbers in the economy. (R. 52-58). In his decision, the ALJ relied on the vocational expert's testimony that Plaintiff could perform multiple light and sedentary exertional positions collectively representing over 350,000 jobs nationally. (R. 25). The Dictionary of Occupational Titles (DOT) indicates that none of the light and sedentary exertional positions the ALJ relied on at step five required exposure to hazards or more than frequent handling and fingering, which is what the State Agency doctors recommended. *See* DOT 209.587-034 (marker position, which involves light exertion; involves frequent handling and fingering and does not involve exposure to moving mechanical parts, electric shock, high exposed places, or other hazards); DOT 222.687- 022 (routing clerk position, same); DOT 222.687-014 (garment sorter position, light exertion; involves frequent handling and occasional fingering and does not involve exposure to hazards); DOT 669.687-014 (inspector position, sedentary exertion; involves frequent handling and occasional fingering and does not involve exposure to hazards); DOT 706.684-030 (assembler position, sedentary exertion; involves frequent handling and fingering and does not involve exposure to hazards); DOT 713.687-018 (final assembler position, same).

As such, even if the Court were to remand with the order that the ALJ consider the handling and fingering limitation in the RFC, it is likely that the ALJ would still find Plaintiff is able to perform a significant number of jobs, including most of those listed in the current RFC. *See Schwartz v. Kijakazi*, 2023 WL 2728819, at *8 (E.D. Wis. Mar. 31, 2023)

(holding any potential error in failing to include a balancing limitation in the RFC would be harmless because the DOT indicated the jobs did not require balancing).

### 2. Third-Party Statement

Next, Plaintiff argues that the ALJ erred in failing to consider the third-party statement of Plaintiff's mother, Tina Sherman. (Doc. 10 at 14). In response, Defendant argues that the ALJ fully considered the third-party statement and that it was not required to provide any additional written analysis. (Doc. 18 at 7).

Per 20 C.F.R. § 404.1520c(d), the ALJ is not "required to articulate how [he] considered evidence from nonmedical sources." While the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). That said, the ALJ need only "minimally articulate [her] reasons for crediting or rejecting evidence of disability." *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992).

Plaintiff's reliance on *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013), is misplaced. In *Garcia*, the Seventh Circuit rejected the implication that "if a plaintiff or a defendant (or a relative of either or a fiancé) testifies in a case, the testimony must automatically be discounted for bias." In that case, the ALJ gave plaintiff's fiancée's testimony only "some weight, recognizing the potential for bias" attributable to their relationship. The Seventh Circuit instructed that the "administrative law judge should have made clear whether he believed the fiancée's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief." *Garcia*, 741 F.3d at 761.

In *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), the Seventh Circuit held that the ALJ's failure to discuss the plaintiff's wife's testimony was not an error when the testimony was redundant and stated the same information as plaintiff's testimony. Because the ALJ explicitly addressed the plaintiff's testimony, the Seventh Circuit ruled that the ALJ did not err by failing to discuss Mrs. Carlson's testimony explicitly. *Carlson*, 999 F.2d at 181.

Here, the ALJ noted that he "has fully considered third party function reports completed by [Plaintiff's] mother, Tina Sherman." (R. 24). Earlier in the report, the ALJ stated that "[i]n function reports filed in late 2020, the claimant said she cared for personal needs, fixed simple meals, mowed the lawn, cleaned the kitchen, did laundry, vacuumed and shopped." This is the same information that was conveyed in the third-party function report written by Tina Sherman. (R. 288-95).

Just as in *Carlson*, the ALJ here explicitly addressed the third-party report and he was not obligated to further articulate his consideration of the redundant evidence. Unlike the ALJ in *Garcia*, the ALJ here did not discount Tina Sherman's testimony, so there was no need to make clear which part of it he believed. Based on the foregoing, the Court finds the ALJ's discussion of Sherman's testimony was sufficient based on the requirements set forth in 20 C.F.R. § 404.1520c.

Additionally, any error that the ALJ may have committed in failing to specifically discuss Tina Sherman's opinions is harmless. The information contained in Plaintiff's and Tina Sherman's reports were substantially similar and, thus, would have been redundant. Therefore, the ALJ did not err in failing to specifically discuss it. *Carlson*, 999 F.2d at 181.

### 3. Development of the Record

Third, Plaintiff argues that the ALJ had a duty to develop the record by obtaining a psychiatric medical opinion to help determine Plaintiff's non-exertional functional capacity stemming from her mental health conditions. (Doc. 10 at 16). In response, Defendant argues that substantial evidence supported the ALJ's mental RFC assessment. (Doc. 18 at 8).

While a claimant bears the burden of proving disability, the ALJ in a social security hearing has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir.1991). This duty is enhanced when a claimant appears without counsel. *Thompson*, 933 F.2d at 585–86. "Although *pro se* litigants must furnish some medical evidence to support their claim, the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms*, 553 F.3d at 1098, *citing* 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3). The court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed to accomplish that goal. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Even in *pro se* cases, "a significant omission" is required before a court will find that the ALJ failed to develop the record fully and fairly. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). "Mere conjecture or speculation that additional evidence might

have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

A consultative examination may be ordered when "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." 20 C.F.R. § 416.919a(b); *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997) ("[T]he ALJ should order a consultative examination when evidence in the record establishes a reasonable possibility of the existence of a disability and the result of the consultative examination could reasonably be expected to be of material assistance in resolving the issue of disability.") A consultative examination is normally required if the evidence is ambiguous, if specialized medical evidence is required but missing from the record, or if there is a change in a condition but the current severity of the impairment is not established. 20 C.F.R. § 416.919a(b).

In *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994), the Seventh Circuit squarely rejected the contention that SSA regulations require the ALJ to "update objective medical evidence to the time of [the] hearing." The Court began by stating that in cases where the claimant is unrepresented, the ALJ has a heightened duty to make sure the record is developed. *Luna*, 22 F.3d at 692. The Court noted that the ALJ discharges his duty to develop a complete medical history if he obtains records from the claimant's medical sources for at least twelve months preceding the date that the claimant files for benefits. *Id.*; *see* 20 C.F.R. § 404.1512(d). Further, the Court held that the ALJ sufficiently developed the unrepresented claimant's record by probing all relevant issues, extensively questioning claimant about his pain, medication, and activities, and reviewing available

medical records. *Id.* More recently, the Seventh Circuit affirmed that there is no evidentiary deficit where an ALJ adequately supports the RFC determination by considering all limitations supported by the record evidence and tying the evidence to the limitations included in the RFC finding. *See Vang v. Saul*, 805 F. App'x 398, 401-02 (7th Cir. 2020) (rejecting argument that ALJ created an evidentiary deficit by not relying on a single medical opinion).

Here, the ALJ relied on several sources of information relating to Plaintiff's struggles with depression and anxiety. The ALJ stated:

> She reported she was last hospitalized for mental issues in November 2014; these records indicated depression, anxiety and previous suicide attempts (Exhibits 7F and 8F). She said her most recent emergency room visit was in December 2020. She does not currently treat with a psychologist or psychiatrist, but sees intern Sanjana Satishkumar at Heritage Behavioral Health Center. In a March 2021 letter, he wrote that the claimant had completed nine sessions (Exhibit 12F). Her current medications include Sertraline for depression (Exhibit 17E) and Trazadone for sleep (testimony).
>
> However, the record is not consistent with mental disability. The finding of severe mental impairment gives the claimant every benefit of the doubt, considering that she has not required a hospital or emergency room for mental symptoms since the alleged onset date, and had not received any mental health treatment for several years, prior to November 2020. She takes no psychotropic medications.
>
> Treatment records were considered. The claimant saw Dr. Howse at OSF Clinton in January 2021 for follow-up of depression. She had normal mood and affect, and denied suicidal ideation (Exhibit 11F/20-22). In February 2021, the claimant said that a medication change had improved her symptoms. She denied any side effects from treatment (Exhibit 11F/18). Records from intern Sanjana Satishkumar at Heritage Behavioral Health Center show the claimant reporting progress towards her goals, with a brighter mood and better communication with her family. She had a boyfriend and was working through issues with her family (Exhibit 15F).

(R. 22). ALJ also noted Plaintiff's regular contact with family and friends and that she performed daily activities, including handling personal care tasks with no problems;

cooking simple meals; and performing chores such as mowing the lawn, doing laundry, cleaning the kitchen, shopping in stores, and managing finances. (R. 22). The ALJ explained that his "finding of severe mental impairment gives the claimant every benefit of the doubt." (R. 22).

Here, the ALJ made a concerted effort to probe Plaintiff's mental health history and impairments by asking specific questions about her treatment, symptoms, and day-to-day activities. (R. 41-48). The ALJ also obtained and considered medical records from several mental health professionals who treated Plaintiff. Indeed, the record indicates that the ALJ requested all records from March 17, 2020, to July 15, 2021, from Heritage Behavioral Health Center. (R. 1684). Given these facts, the ALJ met the requirements for compiling a complete medical history and creating a fully and fairly developed record in this case.

### 4. RFC Restrictions

Finally, Plaintiff argues that the ALJ erred by failing to build an accurate and logical bridge between finding moderate limitations in interactions with others and the varying restrictions on social interactions contained in the RFC. (Doc. 10 at 19). In response, Defendant argues that the ALJ properly identified evidence supporting his social interaction limitations and, alternatively, that Plaintiff failed to show that her impairments required more significant restrictions. (Doc. 18 at 11-13).

The Seventh Circuit has held that while an ALJ does not have to evaluate each and every piece of evidence, they are required to build an "accurate and logical bridge" from the evidence presented to the ultimate conclusion. *Dixon v. Massanari*, 270 F.3d 1171, 1176

(7th Cir. 2011). The RFC is "an assessment of an individual's ability to do sustained work. It is the most an individual can work despite his or her limitations or restrictions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022), *citing* SSR 96-8p, 61 Fed. Reg. 34474, 34475. While an ALJ need not use any "magic words" when formulating a claimant's residual functional capacity, his "RFC assessment must incorporate all of the claimant's limitations supposed by the medical record, including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The "residual functional capacity analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

Here, the ALJ concluded that Plaintiff has moderate restrictions in the ability to interact with others. (R. 23). The ALJ identified evidence supporting his social interaction limitations, including Plaintiff's own testimony that she interacted frequently with friends and family, and the lack of evidence of any altercations or severe social isolation. (R. 23). Thus, the ALJ concluded that Plaintiff's "social deficits restrict her to the extent she is limited to jobs that do not require any work-related interaction with the public and no more than occasional work-related interaction with co-workers and supervisors." (R. 23). The ALJ provided an accurate and logical bridge between the RFC and the evidence. There is substantial evidence to support the ALJ's conclusion that Plaintiff could have brief social contact with coworkers and supervisors.

Moreover, Plaintiff does not cite to any supporting evidence to demonstrate that the ALJ should have limited her to no social contact with coworkers or supervisors. *See*

*Sosh v. Saul*, 818 F. App'x 542, 546 (7th Cir. 2020) ("A claimant who does not 'identify medical evidence that would justify further restrictions' is not entitled to remand."); *see Loveless*, 810 F.3d at 508 (noting plaintiff's argument for further restrictions failed due to plaintiff's failure to identify medical evidence justifying further restrictions). Instead, Plaintiff's request is akin to asking this Court to reweigh the evidence and substitute our judgment for that of the ALJ, which this Court cannot do. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence.")

### III. CONCLUSION

In summary, the Court has considered all of Plaintiff's arguments and concludes that the ALJ properly applied the law and supported his decision with substantial evidence. For these reasons, the decision denying benefits to Plaintiff Kathryn Sherman is AFFIRMED. The Clerk of the Court is directed to enter judgment in favor of the Defendant Commissioner and against Plaintiff Sherman. This case is terminated.

ENTER: August 17, 2023

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE